Good morning, and may it please the Court, Rachel Robinson for Defendant and Appellant Irina Sadovsky. I'd like to reserve three minutes for rebuttal. With the Court's permission, I'll first address the indictment issue, and then I'll turn to the loss calculation in Count 5, unless the Court has other questions. I'd like to start with first principles here. This was a weak case built on the testimony of a serial fraudster, Yigal Karen, who repeatedly referred to Ms. Sadovsky as a sucker, a fool, someone who knew nothing of his criminal scheme, until he was advised that it was in his interest to change his story. Only the Allen instruction, followed by the indictment, got the jury over the finish line to the compromised verdict here. And this Court has long held that a district court's generally broad discretion, excuse me, to interact with the jury significantly limits- Do we have to conclude with regard to the indictment? Do we have to, you said only the indictment pushed him over the line. Do we have to include that that's, what is the standard? Does we have to include that that is true, that the indictment must have pushed him over the line, that the indictment likely pushed him over the line, that it's possible that the indictment pushed him over the line? What do we have to conclude? Sure. So I would point the Court to the Sewell analysis where the district, or where this Court, excuse me, found that a second Allen charge requires per se reversal. I believe that this is akin to a second Allen charge, and in some ways even more coercive because- So if you do this, then for sure, what if we conclude it's less than that? What would be the standard then? Would it be that it's possible that the indictment changed the outcome, or would it be that we need to show this is more likely than not? Under Sullivan, this Court presumes prejudice, and then the Court would look to the totality of the circumstances to determine whether or not the government can overcome that presumption. Okay. But I think here, Ms. Sadovsky did not rest on a presumption of prejudice. She attempted to show actual coercion through the declaration of a holdout juror, and I think that highlights the wisdom of this Court's opinion in Sewell that a per se rule requiring reversal is required here because Ms. Sadovsky came up against those insurmountable hurdles in proving actual coercion that this Court specifically addressed in Sewell. And unlike a second Allen charge, which reminds the jury not to let go of an honestly held belief, here providing the indictment was done without any reminder that the jury should not let go of an honestly held belief. Instead, it invited the jury to reconsider the government's theory of the case and cross-reference that theory with the evidence at trial to the exclusion of Ms. Sadovsky's theory of the case and evidence at trial. The jury did just that, and it reached the... So what could have been done here? I mean, is there anything that... Is it just sending the indictment in that was problematic? Or, I mean, could the judge have done that in combination with something else, like give it, you know, give it a countervailing position on what the defense was, or... I think that after the Allen instruction was given, the judge should not have... The district court should not have... Anything at that point was error. That's right. There was nothing he could have done. He couldn't have given any limiting instruction that would have gone along with this. I believe that that's right. And this court's holding... What if the jury asks the question? Are you saying the judge can't respond to a written question from the jury after the Allen charge? I believe after the Allen charge, the judge would be extraordinarily limited in what response he could give to the jury at that point, because at that point, any further interactions is presumptively coercive. I mean, do we need to... Do we need to conclude that anything after in this case, or do we seem to conclude that the absence of a limiting instruction... In other words, we don't have a case in front of us that has a... Giving an indictment and a really, really good limiting instruction along with the indictments. Hey, hey, hey, I know I just gave you an Allen charge last night, but do not use this indictment. I think that's right. I think that the court doesn't need to consider what limiting instruction would have been appropriate here, because none was given when the indictment was provided to the jury. In the timeline, can you walk us through... So the timeline was it went to the jury, the jury had told them the night before that they were deadlocked. That's right. There was a limiting instruction given when the court figured out what had happened, but that was after the jury had come back and said, we're only deadlocked on one thing? That's correct. And it looks like based on the email... So the jury came back at 9 a.m. the next morning. It looks like from the emails that around 10, 10.09 is when the indictment went back to the jury. But even assuming it was at 9 a.m., by 11.15, there was the follow-on note saying we are only deadlocked as to one count. So it was likely less than an hour that the jury deliberated once it had the indictment. At the longest, it was two hours. And so... And then the judge did not give the limiting instruction that the indictment was not evidence again until after it received that second note that the jury was only deadlocked as to the one count. So even if that instruction was appropriate, and we would argue that that was... That was because defense counsel at that point realized, wait, it's an indictment and it was never sent earlier. That's correct. And so asked for that limiting instruction. That's correct. And it's important here to note that the district court who oversaw this case was not the district court who provided the indictment. And the district court who understood the evidence had declined to refer the jury to the indictment when the jury was asking for guidance as to how to resolve some of its confusion for the evidence underlying the counts of conviction. The district court recognized and acknowledged that it was... The indictment was... Excuse me. Just the government's version of the case. And critically, the district court recognized that there were allegations in the indictment that he was not sure were proven at trial. I imagine that if that district court had been there on that last day of deliberation, the indictment would never have gone back at that point. Or with a really strong... Right. Or with a really strong limiting instruction, we had neither. You'd still be here, but your case would be different. It would be a more uphill battle, I imagine, at that point. But the indictment was provided with no indication as to how the jury should use it. And unless the court has other questions about that, we would ask that you reverse on that ground. And I'd turn to the loss calculation in count five. Okay. Here... And to be clear, if we agreed with you on... That would not end the case. We'd still have to decide these other issues. No, we... No, we'd have to... If we agreed with you on that, we'd just be sending it. We'd be... We would be asking for a reversal for a retrial. Retrial. These are... Okay. Got it. Yes. And so count five is if the court reaches the sentencing issue, which we would ask that it doesn't, and reverse on the indictment issue. But Ms. Sadovsky, because count one and count five grouped, she was sentenced under the fraud guideline, the former fraud guideline, 2B1.1. And as this court stated in Baramo in January of this year, loss as in 2B1.1 is not so ambiguous as to allow for a gain that does not approximate the victim's loss. The court said something similar in Abuamo in December, that loss cannot mean gain. It has to be associated with an approximation of a victim's loss. Here, count one was the conspiracy to commit Medicare and Medi-Cal fraud. Medicare and Medi-Cal were the two identified victims. The district court calculated all loss as to those victims in count one. Count five was the distribution count. And the district court misunderstood or misapplied loss in that count when it calculated loss as the fair market value of the drugs. That is a calculation based on intended ill-gotten gain. And under the guideline, which Ms. Sadovsky was sentenced, that was a misunderstanding of the guideline. And that as well requires a reversal for resentencing. Your view, it should have been measured how? I believe that there was no loss associated with count five because all of the loss to the only two victims was calculated in count one. And the counts grouped and both probation and the district court used the fraud guideline to calculate the sentence here. Couldn't you have intended loss or something along those lines? There still was no intended loss because there was no intended pecuniary harm associated with count five as to Medicare and Medi-Cal, the two victims. All actual and intended loss was calculated in count one, the Medicare fraud count. So the distribution count just involved, not just, but the distribution count involved taking those prescription drugs associated with count one and attempting to sell them on the black market. So there was all loss to the two victims was calculated in count one. If the court doesn't have any other questions, I'll reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors, and may it please the court. Javier Sinha on behalf of the United States. I'd like to begin with count one. Can I ask you about the Allen charge and the indictment? I'm trying to figure out what we should apply here, and I think their preferred standard is per se error. And I assume that you agree. No, I assume you don't agree. So assuming that that's not the standard per se error, then the next standard it seemed would be some sort of presumption of, the next thing that would be most favorable, there would be some sort of presumption, but the government could rebut the presumption. And then the next standard would be that they need to show something. The problem with the last standard, the lowest one is, I mean, they actually tried in this case, right? And they have an affidavit and the rules don't allow it. So it seems harsh and a bit of a classic catch-22 to require the last standard. So can you maybe tell me what standard you think is the right one, what your backup standard is, and why there isn't this catch-22 problem if you go with the standard I think you want us to accept? So this Court's cases say what it looks at is the totality of the circumstances to see if there was improper coercion. It doesn't necessarily say where the burden lies, and on a Rule 33 motion, the burden usually lies on the defendant. But the problem with the totality of circumstances is we don't get to know the totality of the circumstances, and the evidentiary rules don't let us see some of those circumstances. So if there isn't at least some presumption, maybe not a per se, but presumption, how can anybody ever win? That's what I'm, that's what's getting me. How could anybody ever show prejudice, I guess? I think you show prejudice by showing the facts in the record show there was coercion. So you still need to show coercion, but you have to use the facts in the record that are properly in the record to show it. And defendants have one that we list in our brief, certain factors courts look at when they're determining coercion. One of them is how long after, usually an Allen charge that the jury deliberates. Another is a jury instructions here. Another is what is the verdict. In this case... Well, that doesn't help you here, right? Because it was pretty quick. It was two hours or one hour from, I mean, I know when you're in the briefing, I think you talked about a longer timeline because you went from when it was sent to when the case ended, but from the time to when they presumably went from a hung jury on Moore to not being a hung jury on the things that matter here, because they remained a hung jury on the last one, was two hours. Do you disagree with that timeline? I do disagree with that, Your Honor. There's no record in the evidence of what the jury was hung on when they sent their first note saying we're deadlocked. Okay, so I see you're like, they could have been hung on one and then switched, but that seems kind of, you know, they were hung on more than one. Then they went from, they got the indictment. Now they're only hung on, they come back and say two hours later, or most two hours later, and say they're only hung on one. They remain hung on one. It seems that likely that that one that they were hung on was the same one that they remained hung on to the very end. In their first note, they never say we were hung on more than one. They say we are deadlocked, and the second note says we're deadlocked on only one count. Well, we don't know how many they're deadlocked on. It seems kind of weird to come back and say, okay, we're still deadlocked on one count and not say we're deadlocked on one count earlier. We just don't know what was happening. I mean, to the extent that, I guess what I'm saying is, to the extent that they have to show some sort of evidentiary showing, whatever that standard is, this seems to be that case. That's what I'm struggling with. This seems to be that case. You've got a shorter time frame. You know, unless you take a whole bunch of inferences in favor of the government and really bend over backwards, it seems like there's a pretty strong, and that's ignoring the fact that a juror actually has told us that they were changed by this, which none of us are considering. When could they ever win if they couldn't win in this case, like ever show it? Well, I think this case is not actually as strong as you make it out to be, and I'd like to tell you why I think using the facts here. So first, even if it was only two hours, we think it was four hours because we simply don't know what they were hung on, but the jury got the indictment around assuming 10 o'clock. They still deliberated until around two o'clock. So that's four hours until they finally finished deliberating. We know during that time what they were doing was reviewing evidence. So they weren't just coercing to the side of the case. The jury foreperson came out into open court and said, we've been reviewing the evidence. We're going to keep reviewing the evidence, and their very next note after saying we're hung on one count. To say whether or not we're reviewing the evidence alongside the indictment that we got that we think is really important. Otherwise, why would you have given it to us at this moment? They didn't say that. But of course, the court told them then, as Sadowski asked for, the curative instruction that indictments are not evidence. They don't prove anything. So the jury was told again, the indictment, they've been told this twice before, they were told again, the indictment doesn't prove anything. But at that point, we already know that they were only hung on one. They were only deadlocked on one by then. Now you're saying we don't know. It could be a different, you know. We simply don't know. We know that they had narrowed it down to only being deadlocked on one. And we know before they got the curative instruction. We know that, right? I'm not sure we do. They just said in the first, and it was technically a second jury note, but the first about them being deadlocked. They said, we are deadlocked. We want to know what to do next. All they said is we are deadlocked. They also came back and said, we are only deadlocked on one now. And that was before they got the curative instruction, but after they had gotten the indictment. That's correct. But we simply don't know if they're deadlocked on totally different counts, on just one count, on multiple counts. The jury is a black box in this case. And so all we know is they were deadlocked before. So if it takes something more than the evidence that we have in this case, whatever that standard is, wouldn't they have to come back and say, that indictment was really helpful. Thank you, Your Honor. It really helped us decide this. And we moved from being hung on more counts to one count. Is that what would be required? We don't need that much. Okay. Well, I point this court to what this court said before. It's things like the form of the jury charge, any curative instruction, the time between getting sort of the charge or whatever they think is coercive and then deciding. So here, the court gave the curative instruction that Sotofsky asked for, which is that the indictment is not evidence. After they had moved to being only deadlocked on one issue, which they remained deadlocked on one issue all the way till the end. So effectively, after they had decided everything that was decided in this case. Even after they got that curative instruction, they deliberated, which again, was the one that Sotofsky asked for. She could have asked for something different and she didn't. They kept deliberating then for about two hours. And their very next jury note was, can we get testimony from a defense witness about a certain issue? And so we know that they were still reviewing the evidence closely there. They weren't just sort of coercing to making decisions. They were still reviewing the evidence. And I think the split verdict here is also pretty good evidence that they weren't coerced. The fact that the jury found Sotofsky not guilty on 10 counts shows they weren't coerced into finding her guilty. And the fact that they hung on one count shows they weren't coerced into reaching their verdict at all. The problem I have with that argument is, the other way that evidence cuts or that argument cuts is that it means that the jury found this to be a tough, close case. And so if you think that it could mean that, and I don't know how you could argue that it couldn't mean that. I don't know if it does. Then all the more so, something like an indictment that just shows up on the second or third day of the trial might have more so influence. And if it's a super easy case, maybe an indictment wouldn't have affected the outcome. But it seems like if it was a hard case, maybe it did. We don't know what the jury thought about this case. We know what their verdict was, and we know they had a ton to deliberate here. But I think it'd be a different case if the jury was never told anything about the indictment. But they were told both before and after the trial. We presume that juries follow their instructions, and we presume the jury knew, this simply is not evidence. And the fact that the jury said, even after they got the indictment, what we've been doing is reviewing evidence, what we're going to keep going back to do is review more evidence, shows they weren't just reviewing the indictment. They were told in the jury instructions, which again, we presume they follow, the evidence that you have to look at to decide this case is evidence adduced at trial and testimony adduced at trial. So the jury knew what the evidence was. It was the evidence at trial. There's no reason to think they thought this indictment was evidence. And the fact that they kept reviewing testimony. Well, no reason. I mean, they got the indictment and two hours later, they've got a verdict on at least one count. I disagree on that. We don't know exactly what happened with their deadlocked on before and after. Well, we're never going to know, right? That's one of the whole keys of a jury system is that you're not supposed to know what goes on in the jury room. So I'm not sure you can keep pointing to that as favoring you. I mean, we don't know because we intentionally don't want to know. That's correct. I just want to make sure the court doesn't say, well, we knew they were deadlocked on five counts before and then they were only deadlocked on one later. That's something we just don't know. We don't know how many were deadlocked before and how many there are. We only know they're deadlocked before and after. But I think the fact that they were told three separate times this indictment is not evidence. Just on that, my recollection is, so I get your point that we didn't have a number before. We have a number the second time the jury. That's correct. But as I recall, the way the jury said it, ordinary human communication would make you think that they had narrowed the range on which there were deadlocked. But maybe I'm misremembering. So can you tell me what, I probably have it here somewhere, but what did they say the first time and what did they say the second time? So the first jury note said, we are currently deadlocked and need instruction from the judge. We'd like to break for the day two. Okay. That's the note. The second note said, let me find it here. We are deadlocked on only one count. If we can't reach it. So yeah, that's just something that, I mean, if I tell my colleagues, you know, I don't agree with you on this. And then I can't, well, now I only don't agree with you on one thing. You know, that's just usually ordinary human that you think that there's something's narrowed. That's why. I just think we just don't know. I think this court could maybe say it's possible, but I don't think we know. And I just want to make sure that the facts are clear that we simply don't know what the jury was saying. But again, even if we think that's true, this court has said two hours after an Allen charge, when the jury comes back, that's more than enough time. This court has approved up to 90 minutes after an Allen charge. You mean just one Allen charge with nothing more? Is that what you're saying? That's correct. And here, of course, the defendant isn't challenging the Allen charge. The defendant's only challenging the indictment looked at in the context of the entire deliberation process. And I'll remind the court, the Allen charge happened the night before, the first day of deliberation. So they got the Allen charge, which the court gave this court's pattern mild Allen charge instruction. And then they, and that instruction also said, do not change an honest belief just to reach a verdict, which is just very clear that the court heard that instruction. The court then, excuse me, the jury then went home, came back the next day, and then received the indictment. So if there was a coercive effect of that Allen charge, it would have dissipated overnight before they came back the next day. But in terms of the jury itself, it was, if we just look at the time when the jury was together, it was immediately after the Allen charge, right? I mean, because they broke right then. So if we're just looking at jury time within 10 minutes of the Allen charge, they had the indictment. That's correct. Something like that. Yeah. They got it when they got back around, presumably around 10 o'clock. It's not totally clear from the record when they got it. Can you address Evanston? I mean, why doesn't Evanston control here? That was where an we said that was coercive. And I understand we have to look at totality of circumstances, so maybe there's something in there. I'd like to hear what your position is on that. Evanston's an entirely different case, Your Honor. And it wasn't an indictment that went back. What happened in Evanston was the jury was hung. The court asked the jury, what are the factual issues you're hung up on? The jury told the court what those facts were. And the court had the parties give supplementary argument during deliberation to help the jury break a deadlock. That's a wildly different point. Actually, why is this not a worse case? Because essentially by just giving them the indictment, that you're essentially letting the government come in and give their argument of what they think the facts are in the case and not letting the defense give the counter indictment or their counter facts. It just seems like it's almost worse than Evanston. I think there's a couple of pretty important differences. The main one being arguments by counsel, courts instruct juries about this, are designed to help the jury interpret the evidence. Indictments are not that. The jury was very clearly told, arguments are to help you determine what the evidence meant. The challenge here, so I get that, but the challenge here is, I mean, I'm a juror. I tell the judge the night before, listen, we're deadlocked. The judge says, you know, Al in charge and sends him home immediately. Next morning they come in and sometime very close to when they come in, they get this thing. And I just, isn't it, I think even likely, but certainly possible that they thought this thing was responsive to what they had told the judge just before they got sent home the night before. So a few points on that. The first is that the judge said, when I respond to a jury note from you, it'll be either in writing or in person in court. So the indictment was neither of those. It wasn't a jury response in writing. It wasn't an open court. So the jury wouldn't have seen that as responsive to the second jury note from the night before. And given the timeline, I think that also wouldn't have affected. The jury wouldn't have thought that this indictment is a response to something we got a day before, especially when they were already given it. What do you think they thought it was? What do you think they thought when they got this thing? We simply can't know, Your Honor. But again, when they came back an hour later and said we're still deadlocked, the jury told them this indictment is not evidence. It's just a charging document. It doesn't prove anything. So the jury knew this was not evidence and they were told the night before, don't change an honest belief you have just to reach a verdict. And so they were given that instruction. They were given the additional instruction that the indictment's not evidence. They deliberated for four hours. We know they weren't just sort of being coerced into reaching a verdict. They didn't reach a verdict on one count. They found not guilty on some counts. And they told us what we're doing is reviewing the evidence here. So they were not just coerced. They were carefully reviewing the evidence in this case to determine guilt or not guilt. I'm happy to turn to the law. I mean, you probably concede though it wasn't great that the indictment went back without a limiting instruction, right? I think had we known, we would have perhaps asked for one. And I think this is probably not best practice. But it doesn't rise to the level of coercion here, Your Honor, because the jury was given these instructions that were very clear. They deliberated for about four hours after they got it. And the split verdict, I think, is probably the best evidence that shows they weren't coerced to reach any verdict at all, let alone a verdict of guilty. My time is running up. I'm happy to... So if a court had a rule, like if our brother, Judge Cole, goes back and decides every time he has a deadline jury, he just sends up the indictment, that would not be a good rule to have? Probably not best practice. But of course, this court will look to the totality of circumstances. It might be effective in getting the case moved along. But the totality of the circumstances. And so it looks to all the facts in the record. In this case, the specific facts here show there was no jury coercion. I think the timing of the verdict, I think the instructions the jury was given multiple times about the indictment, and the fact that they were told don't change an honest belief, and the fact that they came back with verdicts of not guilty. And one still hung verdict, which shows they weren't coerced into just reaching a verdict no matter what. Okay. Thank you, counsel. Thank you very much, Your Honor. You have time for rebuttal. Thank you. I'd like to hone in on something that the government counsel argued multiple times here, which is that we don't know what happened with the jury, and that the jury is a black box. This is precisely why this court should apply C-Well to the facts here, because we could have known but for the prohibition against learning about internal jury deliberations. And because we don't know, again, the government cannot overcome a presumption, if that is the standard this court applies, that there was coercion here. I think, Judge Medak, you're right that the Evanson case is instructive here, and in fact, this case is worse, because there was no opportunity for defense counsel to highlight its theory of the case and its evidence. And for the reasons we've addressed, the late reminder that the indictment is not evidence was insufficient to cure the coercion that existed when the jury received the indictment. And unless... I mean, the problem is sort of, as we've been saying, and as government counsel said, the jury is a black box. So if there's a presumption, it's going to be very hard for them to overcome it. If it's your burden, it's going to be very hard for you to meet it. It just, it seems like whichever, whoever bears the burden is predestined to lose almost, because we're not going to allow investigation of what's going on in the jury room. And I think that's why in Sewell, the court has found that the Sixth Amendment rights of the defendant must control in a case like this. And perhaps in some instances, that's an unfair rule for the government, but it must be this way in order to protect the defendant's rights to a fair trial. Well, and this, I mean, this was an unfortunate accident. Nobody's really fault. It's just the two different... And so, I doubt, I expect this would not happen very often. I think this is a unique case. Unless he takes my advice and gives him the indictment every time he has a hung jury. That'll be the Sixth Amendment. Well, that will be your problem, right? Yeah. But yes, unless the court has any other questions, we would ask the court to reverse the convictions and I'd submit on that. Okay. Thank you. Thank you to both counsel for your arguments in a unique case, for sure. The case is now submitted and that concludes our arguments for the day. All rise. Hear ye, hear ye. All persons having had business with the Honorable United States Court of Appeals for the Ninth Circuit will now depart for this court for this session. Now stand adjourned.
judges: NELSON, VANDYKE, Cole